FILED

DEC 1 4 2012

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

CESAR ALFARO,

    Plaintiff,

vs.

D. HIGGERSON, et al.,

    Defendants.

No. C 10-04416 EJD (PR)

ORDER GRANTING DEFENDANT'S MOTIONS FOR SUMMARY JUDGMENT

(Docket No. 69)

    Plaintiff, a California inmate at the Pelican Bay State Prison ("PBSP") in Crescent City, has filed a pro se civil rights action under 42 U.S.C. § 1983 against PBSP officials for allegedly unconstitutional acts. On March 30, 2012, the Court granted summary judgment to all remaining Defendants except for Defendant Hawkes who was served but had not filed a responsive pleading. Presently pending is Defendant Hawkes' motion for summary judgment. (Docket No. 69.) Plaintiff did not file an opposition despite being provided extra time and informed of the requirements to oppose summary judgment in light of *Woods v. Carey*, 684 F.3d 934 (9th Cir. 2012). (Docket No. 73.)

///

///

///

# DISCUSSION

## I. Statement of Facts[1]

### A. Validation as Prison Gang Associate

The procedure for establishing gang membership is referred to as the "validation" process. See Cal. Code Regs. tit. 15, § 3378(c); Madrid v. Gomez, 889 F. Supp. 1146, 1241 (N.D. Cal. 1995). Under state regulations, an inmate's affiliation with a prison gang is investigated by the prison's Institutional Gang Investigator ("IGI") or a designee. Id.; Madrid, 889 F. Supp. at 1241. To validate an inmate as a gang "member" or "associate," the IGI (or designee) must support the validation with no less than three independent pieces of evidence indicating prison gang affiliation. Id., § 3378(c)(3) & (4); (Hawkes Decl. ¶ 6.) The evidence can be tangible evidence (e.g., tattoos, written materials, or photographs), or intangible evidence (e.g., the statement of a confidential informant, information from other agencies, or self admission). Madrid, 889 F. Supp. at 1241-42; Cal. Code Regs. tit. 15, § 3378(c)(8). The use of information from a confidential information is precluded unless "other documentation corroborates information from the source, or unless the circumstances surrounding the event and the documented reliability of the source satisfies the decision maker(s) that the information is true." Id., § 3321(b)(1).

Once the IGI believes that there is sufficient evidence to validate an inmate, the IGI sends a "validation package" to the Office of Correctional Safety ("OCS") – CDCR's gang intelligence unit – for final review. Madrid, 889 F. Supp. at 1242; id., § 3378(c)(6)(A). A Special Agent at OCS reviews the validation package to determine whether it meets Departmental gang-validation standards. Id., § 3378(c)(6). If the Special Agent validates an inmate, the validation is memorialized on a validation chrono (CDCR Form 128-B-2) and forwarded to the inmate's prison for placement in the inmate's central file. Id., § 3378(c)(6)(G).

---

[1] The following facts are undisputed and as noted above, Plaintiff did not oppose the summary judgment motion.

Order Granting Motion for Summary Judgment
Alfaro04416_grant-msj2.wpd

2

The prison's Institutional Classification Committee ("ICC") is convened to determine whether the inmate should be retained in the SHU, the prison's highest-security inmate housing, for an indeterminate term based on his gang affiliation. Madrid, 889 F. Supp. at 1243; id., § 3338(d). At a hearing, the inmate is given an opportunity to dispute the evidence before a final housing decision is made, although the evidence is not re-evaluated at that time. Madrid, 889 F. Supp. at 1243. The committee's recommendation to transfer or retain the inmate in the SHU for an indeterminate term must be approved by a Classification Staff Representative. Cal. Code Regs. tit. 15, §§ 3341.5, 3379(a)(1).

An inmate assigned to an indeterminate SHU term for gang affiliation is afforded two types of periodic reviews. The Unit Classification Committee ("UCC") reviews an inmate's housing assignment every 180 days. Id., § 3341.5(c)(2)(A)(1). The ICC reviews an inmate's housing assignment annually. Madrid, 889 F. Supp. at 1244. Although only ICC can order the inmate's release from the SHU, the UCC may inquire into the propriety of the validation and recommend a change in the inmate's status. Id.

B.  Plaintiff's Validation as a Prison Gang Associate

In the Court's March 30, 2012, Order granting Summary Judgment the relevant facts of the case where set forth which the Court repeats below:

> On November 3, 2006, PBSP's Institutional Gang Investigations Unit began an investigation into Plaintiff's gang status. (Higgerson Decl. ¶ 9.) As part of the investigation, Defendant IGI Higgerson reviewed the following documents which lead him to recommend Plaintiff's validation as a Mexican Mafia associate.
>
> 1.  Confidential Informant Memorandum dated December 10, 2004
>
> A confidential memorandum dated December 10, 2004 contained information provided in a confidential debriefing report by a Mexican Mafia associate wishing to disassociate himself from the gang, and thus deemed reliable under Departmental regulations. (Higgerson Decl. ¶ 9a, Ex. A at 1.) During the course of the debriefing process, the gang investigations unit conducted several interviews and determined that most of the information provided by the debriefing inmate was true, and was further verified in documents in the inmate's central file. (Id. at 7.) It was determined that the informant was sincere in his request to debrief and disassociate himself from the Mexican Mafia prison gang. Accordingly, the gang investigations unit considered the informant to be under California Code of Regulations, Title 15, Division 3, Article 5, § 3321(c)(1)-(4); id. at 7.

In the debriefing report, the informant identified Plaintiff as the person of authority representing the Mexican Mafia when he arrived at the California Substance Abuse Treatment Facility ("CSATF"). (Higgerson Decl. ¶ 9a, Ex. A at 1, 3.) The inmate further stated that after another inmate was removed from Facility C due to being validated as a prison gang associate, the chain of command changed and Plaintiff was asked to step down so that another inmate could take over. (Id.) Inmates unaffiliated with prison gangs do not alter their behavior because another inmate becomes validated as a prison gang member or is moved from the yard. (Id.) Plaintiff was also seen interacting with individuals identified as Mexican Mafia prison gang associates. (Id.) Association with a prison gang affiliate may be used as evidence to support an inmate's gang validation under Departmental regulations. See Cal. Code Regs. tit. 15, § 3378(c)(8)(G). Accordingly, Defendant Higgerson used this evidence in support of Plaintiff's validation. (Higgerson Decl. ¶ 9a, Ex. A at 1, 3.)

2. <u>Confidential Informant Memorandum dated December 21, 2004</u>

A confidential memorandum dated December 21, 2004 includes information provided by a self-admitted Mexican Mafia prison gang associate who wished to debrief as a member of the Mexican Mafia prison gang. (Higgerson Decl. ¶ 9b, Ex. B at 7, 8.) The information provided by the confidential informant was determined to be reliable under Departmental regulations because the informant no longer believed in the gang's cause and no longer wanted to be part of the Mexican Mafia organization. (Id.) The informant was also deemed reliable because the majority of the information received was subsequently proven true and was verified by supporting documentation. (Id.)

The information from the debriefing stated that Plaintiff was in a position of authority for the Mexican Mafia prison gang. (Higgerson Decl. ¶ 9b, Ex. B at 7, 8.) The informant stated that Plaintiff was "running" the general population housing unit on Facility B for the Mexican Mafia prison gang and enforcing their orders. (Id.) This memorandum corroborates the December 10, 2004 confidential memorandum indicating that Plaintiff had a leadership position in the Mexican Mafia. (Id.) The informant reported that Plaintiff, in his capacity as the overall authority representing the Mexican Mafia prison gang, introduced the informant to another validated Mexican Mafia prison gang associate after he finally received yard access at CSATF. (Id. ¶ 8, 9b, Ex. B at 7.) The informant further reported that Plaintiff was asked to step down so that another inmate could take over as the overall authority for the Mexican Mafia prison gang activity. (Id. ¶ 9b, Ex. B at 8.)

Association with a validated prison gang affiliate may be used as evidence to support an inmate's gang validation under Departmental regulations. See Cal. Code Regs. tit. 15, § 3378(c)(8)(G). Because inmates unaffiliated with prison gangs do not introduce other inmates to members of their prison gang, and because it was reasonable to believe that Plaintiff was in contact with Mexican Mafia members in order to effectively "run" a facility for the Mexican Mafia, Defendant Higgerson accepted the information in the memorandum as evidence supporting Plaintiff's validation. (Higgerson Decl. ¶ 9b.)

3. <u>CDC Form 128B Dated May 12, 2006</u>

On May 9, 2006, while Defendant Barneburg was processing outgoing inmate

mail generated in Building 8, he noticed a letter from Plaintiff addressed to an Elizabeth Facio, 374 South Cornell Street, Porterville, California 93257. (Barneburg Decl. ¶ 4, Ex. A.) After checking institutional records, Defendant Barneburg found that the intended address was a "third-party mail-drop" address used by a validated Mexican Mafia prison gang member. (Id.) Using mail drop addresses permits gangs to continue their criminal activities while incarcerated. (Barneburg Decl. ¶ 4.) Inmates associated with a prison gang often forward mail to other gang affiliates or gang members using "third-party" addresses because gang members are often paroled, discharged, or transferred to other prisons, and it is the best way to communicate planned assaults or other criminal activities. (Higgerson Decl. ¶ 9c.) Mail-drops are detected using several methods. (Barneburg Decl. ¶ 4.) The information may come from inmates who debrief, from officials noticing that several gang members are writing to the same address, or from reviewing inmates' correspondence. (Id.)

On May 12, 2006, Defendant Barneburg noted his findings on CDC Form 128-B, and recommended that the mail in question be considered as evidence to potentially validate Plaintiff as a Mexican Mafia associate. (Barneburg Decl. ¶ 5, Ex. B; Higgerson Decl. ¶ 9c.) Under Departmental regulations, sending mail to the address of another validated prison-gang affiliate constitutes evidence of association and can be used to support an inmate's gang validation. See Cal. Code Regs. tit. 15, § 3378(c)(8)(G). Defendant Higgerson used this evidence to support Plaintiff's validation. (Higgerson Decl. ¶ 9c.)

### 4. Confidential CDC Form 128B Chrono dated October 6, 2006

According to Defendants, inmates associated with prison gangs often retain the personal address of other gang affiliates to maintain contact with these individuals. When gang members are paroled, discharged, or transferred to other prisons, prison gang members often communicate with each other to plan assaults or other criminal activities through writing. (Higgerson Decl. ¶ 9d.) Defendant Higgerson has reviewed hundreds of gang validations that were supported in part by evidence that the accused inmate had in his possession the addresses of one or more validated gang members. (Id.) On October 6, 2006, IGI McBride documented on Confidential CDCR Form 128-B, a search of Plaintiff's personal belongings during which he discovered an address book containing a "third-party mail-drop" used by a validated Mexican Mafia associate. (Id. ¶ 9d, Ex. D.) Under Departmental regulations, an address of another validated prison gang affiliate constitutes evidence of association and can be used in support of an inmate's gang validation. (Id.) Accordingly, Defendant Higgerson used this evidence to support Plaintiff's validation. (Id.)

On November 6, 2006, Plaintiff was issued a CDC 1030 Confidential Information Disclosure Form for the confidential documents and a copy of the non-confidential documents used in the validation package. (Id. ¶ 10, Exs. E, F, G & H.) Plaintiff was also informed that he would be interviewed by the IGI and would have an opportunity to express his opinion regarding the documents used in the validation. (Id.) Furthermore, Plaintiff was informed that his photograph would be taken and the entire package would be forwarded to the Law Enforcement and Investigation Unit ("LEIU") for possible validation. (Id.)

On November 9, 2006, Defendant Higgerson, IGI Hernandez, and IGI McBride interviewed Plaintiff regarding the documents used in the validation package.

> (Id. ¶ 11.) Plaintiff submitted two pages of response to the documents used in the validation. (Id., Ex. I.)
>
> On January 11, 2007, after completion of the investigation and consideration of all the documents, including Plaintiff's response, Defendant Higgerson and the IGI Unit, which included Defendants Special Agents Marquez, Fischer, Smith and Spear, recommended that Plaintiff be validated as an associate of the Mexican Mafia prison gang. (Id. ¶ 12; Docket No. 53 at 13.) The recommendation was then forwarded to the LEIU to update Plaintiff's gang status. (Id. ¶ 14.) Following the gang validation, the ICC recommended Plaintiff's continued retention in the SHU for an indeterminate term. (Id. ¶ 12.) Pursuant to regulation, a Classification Staff Representative subsequently endorsed this recommendation. (Id.) On January 11, 2007, Plaintiff was validated as a prison gang associate. (Pet. at 3.)

March 30, 2012, Court Order at 3-8.

It is undisputed that Defendant Hawkes, had no involvement in the validation process of Plaintiff that was described above. On October 11, 2007, Defendant Hawkes submitted a revised CDC 1030 Confidential Disclosure Form correcting the date on the November 6, 2006, form. (Hawkes Decl. ¶ 12.) The November 6, 2006, CDC 1030 form erroneously identified a confidential document date as October 10, 2006, when the document was actually dated October 6, 2006. (Id.) The substance of the form was correct and other than the date nothing else was changed. (Hawkes Decl. ¶ 13.) The sole purpose of Defendant Hawkes October 11, 2007, CDC 1030 form was to correct the date. (Hawkes Decl. ¶ 12.) Defendant Hawkes had no other involvement in this case. (Compl. at 3.) Plaintiff's only allegation against Defendant Hawkes is that he did not inform the disclosing staff member or Plaintiff of the error prior to making the clerical correction. (Compl. at 5.)

## II. Summary Judgment

Summary judgment is proper where the pleadings, discovery and affidavits demonstrate that there is "no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A court will grant summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial . . . since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex Corp.

1  v. Cattrett, 477 U.S. 317, 322-23 (1986). A fact is material if it might affect the outcome of
2  the lawsuit under governing law, and a dispute about such a material fact is genuine "if the
3  evidence is such that a reasonable jury could return a verdict for the nonmoving party."
4  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

5        Generally, the moving party bears the initial burden of identifying those portions of
6  the record which demonstrate the absence of a genuine issue of material fact. See Celotex
7  Corp., 477 U.S. at 323. Where the moving party will have the burden of proof on an issue at
8  trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than
9  for the moving party. But on an issue for which the opposing party will have the burden of
10 proof at trial, the moving party need only point out "that there is an absence of evidence to
11 support the nonmoving party's case." Id. at 325. If the evidence in opposition to the motion
12 is merely colorable, or is not significantly probative, summary judgment may be granted. See
13 Liberty Lobby, 477 U.S. at 249-50.

14       The burden then shifts to the nonmoving party to "go beyond the pleadings and by her
15 own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,'
16 designate specific facts showing that there is a genuine issue for trial.'" Celotex Corp., 477
17 U.S. at 324 (citations omitted). If the nonmoving party fails to make this showing, "the
18 moving party is entitled to judgment as a matter of law." Id. at 323.

19       The Court's function on a summary judgment motion is not to make credibility
20 determinations or weigh conflicting evidence with respect to a material fact. See T.W. Elec.
21 Serv., Inc. V. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987). The
22 evidence must be viewed in the light most favorable to the nonmoving party, and the
23 inferences to be drawn from the facts must be viewed in a light most favorable to the
24 nonmoving party. See id. at 631. It is not the task of the district court to scour the record in
25 search of a genuine issue of triable fact. Keenan v. Allen, 91 F.3d 1275, 1279 (9th Cir.
26 1996). The nonmoving party has the burden of identifying with reasonable particularity the
27 evidence that precludes summary judgment. Id. If the nonmoving party fails to do so, the
28 district court may properly grant summary judgment in favor of the moving party. See id.;

Order Granting Motion for Summary Judgment
Alfaro04416_grant-msj2.wpd                    7

see, e.g., Carmen v. San Francisco Unified School District, 237 F.3d 1026, 1028-29 (9th Cir. 2001).

### A. Due Process

Changes in conditions of confinement may amount to a deprivation of a state-created and constitutionally-protected liberty interest, provided the liberty interest in question is one of "real substance," see Sandin v. Conner, 515 U.S. 472, 477, 484-87 (1995), and, in particular, where the restraint "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life," see id. at 484. In Superintendent v. Hill, 472 U.S. 445, 455 (1985), the Supreme Court held that disciplinary proceedings do not satisfy due process requirements unless there is "some evidence" in the record to support the findings of the prison disciplinary board. The Ninth Circuit requires that "some evidence" also support a decision to place an inmate in segregation for administrative reasons. See Toussaint v. McCarthy, 801 F.2d 1080, 1104 (9th Cir. 1986). This standard applies to placement in a SHU for gang affiliation. Bruce v. Ylst, 351 F.3d 1283, 1287-88 (9th Cir. 2003) (noting that any one of three pieces of evidence -- a sheriff's department report that prisoner was a gang member, a probation report that prisoner's codefendant was a gang member, and a statement from a prison informant -- would constitute "some evidence"). The standard is met if there was some evidence from which the conclusion of the administrative tribunal could be deduced. See Toussaint, 801 F.2d at 1105 (citing Hill, 472 U.S. at 455). Ascertaining whether the standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses or weighing of the evidence. See id. Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached. See id.

The Ninth Circuit also requires that the evidence relied upon by prison disciplinary boards contain "some indicia of reliability," Cato v. Rushen, 824 F.2d 703, 705 (9th Cir. 1987), but has not directly considered whether a corresponding need for evidentiary

reliability exists when prison officials segregate an inmate for <u>administrative</u> reasons.[2] Some district courts have extended the reliability requirement to the administrative context, however, holding that "the evidence relied upon to confine an inmate to the SHU for gang affiliation must have 'some indicia of reliability' to satisfy due process requirements." <u>Madrid v. Gomez</u>, 889 F. Supp. 1146, 1273-74 (N.D. Cal. 1995); see <u>Jones v. Gomez</u>, No. C 91-3875 MHP, 1993 WL 341282, *3-4 (N.D. Cal. Aug. 23, 1993) (order denying summary judgment) (due process requires indicia of reliability due to high risk of false information by informants, inherent prisoner conflicts and necessity for independent factfinding by prison officials).

As set forth in the Court's March 30, 2012, Order granting summary judgment, Plaintiff was properly validated as a gang member as there was some evidence and Plaintiff received all the proper procedural protections, which the Court reaffirms here. However, Defendant Hawkes, the sole defendant in this motion for summary judgment had no involvement in Plaintiff's gang validation. Hawkes only involvement consisted of correcting a clerical error regarding the date of a memo that did not affect the substance of any of the charges or evidence against plaintiff. Summary judgment is granted for Defendant Hawkes as this clerical change had no impact on Plaintiff's validation as a gang member and did not violate Plaintiff's Due Process rights.

## CONCLUSION

For the reasons stated above,

---

[2] If the information relied upon by the disciplinary committee are the statements of an unidentified informant, due process requires that the record contain: (1) some factual information from which the committee can reasonably conclude that the information was reliable and (2) a prison official's affirmative statement that safety considerations prevent the disclosure of the informant's name. See <u>Zimmerlee v. Keeney</u>, 831 F.2d 183, 186 (9th Cir. 1987), <u>cert. denied</u>, 487 U.S. 1207 (1988). Reliability may be established by: (1) the oath of the investigating officer appearing before the committee as to the truth of his report that contains confidential information, (2) corroborating testimony, (3) a statement on the record by the chairman of the committee that he had firsthand knowledge of sources of information and considered them reliable based on the informant's past record, or (4) <u>in camera</u> review of the documentation from which credibility was assessed. See <u>id.</u> at 186-87.

1. Defendant's motion for summary judgment is GRANTED.[3] (Docket No. 69.) Plaintiff's claims against Defendant Hawkes are DISMISSED with prejudice. The Clerk shall terminate this Defendant from this action.

This order terminates Docket Nos. 69.

DATED: 12/14/12

EDWARD J. DAVILA
United States District Judge

---

[3] Because the Court finds that no constitutional violation occurred, it is not necessary to reach Defendant's qualified immunity argument.

UNITED STATES DISTRICT COURT

FOR THE

NORTHERN DISTRICT OF CALIFORNIA

CESAR ALFARO,

    Plaintiff,

v.

D. HIGGERSON, et al.,

    Defendants.

Case Number CV 10-04416 EJD (PR)

**CERTIFICATE OF SERVICE**

I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District Court, Northern District of California.

That on 12/14/12, I SERVED a true and correct copy(ies) of the attached, by placing said copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing said envelope in the U.S. Mail, or by placing said copy(ies) inter-office delivery receptacle located in the Clerk's office.

**Cesar Alfaro**
E-68257
Pelican Bay State Prison
P.O. Box 7500
Crescent City, CA 95531

DATED: 12/14/12

Richard W. Wieking, Clerk
By: Elizabeth Garcia, Deputy Clerk

Alfaro04416_judgment.wpd